Opinion filed February 27, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00328-CR

_____

### DANIEL HERNANDEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 9457-D**

### M E M O R A N D U M   O P I N I O N

The jury convicted Daniel Hernandez of aggravated sexual assault and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of ten years. The jury additionally imposed a fine of $5,000. Appellant challenges his conviction in three issues. We affirm.

*Background Facts*

Abilene Police Officer Patrick Perez received a report on March 13, 2006, from Gloria Hermosillo that her physically disabled adult son, PSEUMT,[1] had been sexually assaulted. Officer Perez met with Hermosillo and PSEUMT on that date. PSEUMT told him that he had been "anally raped" by Appellant. Officer Perez turned the case over to Detective Thomas Valdez.

Detective Valdez met with PSEUMT and Hermosillo on March 14, 2006. PSEUMT informed Detective Valdez that Appellant sexually assaulted him at his mother's apartment in Abilene in late December 2005. Both Officer Perez and Detective Valdez testified that PSEUMT was crying and upset when he reported the assault to them. Detective Valdez further testified that PSEUMT sought medical treatment on December 26, 2005, for rectal bleeding as a result of the assault.

Detective Valdez contacted Appellant, and Appellant voluntarily came in for an interview. Appellant told Detective Valdez that he was homosexual and that he and PSEUMT engaged in consensual anal sex at PSEUMT's request. Appellant alleged that the act occurred after he and Hermosillo had been "clubbing." Appellant denied prior sexual conduct with PSEUMT during his meeting with Detective Valdez.

Hermosillo testified that PSEUMT is physically disabled as a result of a car accident and that he cannot walk without the aid of crutches.[2] PSEUMT resides with her because he cannot support himself financially. Hermosillo worked with Appellant several years earlier. She testified that they had been friends for a long

---

[1]The alleged victim was referred to in the indictment and jury charge as "PSEUMT," and the parties have continued to use this pseudonym in their briefs. We will also use this pseudonym in our opinion.

[2]The medical records from the medical treatment that PSEUMT received on December 26, 2005, indicated that he was paraplegic.

time and that he "was like [a] brother" to her. Hermosillo further testified that Appellant and PSEUMT were not friends and did not visit or socialize. She also testified that Appellant is homosexual.

PSEUMT did not tell Hermosillo about the alleged assault until a few months after it happened. He told her about it when she told him that she was going to ask Appellant for some money for cigarettes. PSEUMT told her that he did not want her to ask Appellant for anything because Appellant sexually assaulted him the last time they were together.

PSEUMT was nineteen years old at the time of the assault. He testified that he is paralyzed from the chest down as a result of a car accident in 2002. He also testified that he cannot stand or walk without crutches and that he is impotent. He had known Appellant for thirteen years because Appellant and his mother socialized, but he did not socialize with Appellant. PSEUMT testified he knew Appellant was homosexual. PSEUMT stated that he is heterosexual.

PSEUMT testified that Appellant "anally raped" him. The incident occurred after Appellant entered PSEUMT's bedroom on multiple occasions after returning to Hermosillo's apartment. PSEUMT testified that he was asleep when Appellant came into his room on a previous occasion and asked PSEUMT, "Have you ever thought about being gay?" Appellant also rubbed his genitals (with his pants still on) against PSEUMT's arm on a previous visit to PSEUMT's room. PSEUMT responded by calling for Hermosillo to get Appellant out of his room. Appellant told Hermosillo that he was "just playing" with PSEUMT.

The alleged assault occurred during a subsequent visit by Appellant to PSEUMT's room. PSEUMT testified that he tried to leave his room on this occasion but that he was unable to do so. Appellant put PSEUMT in a headlock, causing him to pass out. PSEUMT attempted to defend himself but he was unable to use his legs to repel Appellant. PSEUMT eventually awoke with Appellant on

3

top of him penetrating his anus with Appellant's penis. PSEUMT testified that he was sick the next day and that he eventually went to the hospital because of anal bleeding. He further testified that it took him two weeks to recover from the physical trauma he suffered as a result of the sexual assault.

Appellant testified on his own behalf during the guilt/innocence phase. During his testimony, he acknowledged that he was homosexual and that PSEUMT was aware of it. Appellant testified that PSEUMT propositioned him and put his hands on Appellant on the night the sexual encounter occurred. He also testified that PSEUMT was watching a pornographic film and that PSEUMT had an erection at the time. Appellant testified that he and PSEUMT engaged in consensual sex. On cross-examination, Appellant testified that PSEUMT may have fabricated the allegation against him because Appellant stopped having sex with him.

*Issues*

In his first issue, Appellant challenges the sufficiency of the evidence. Appellant's second issue concerns the admission of extraneous conduct evidence. In his third issue, Appellant alleges that his trial counsel was ineffective by failing to secure the attendance of a material witness.

*Sufficiency of the Evidence*

We review a sufficiency of the evidence issue, regardless of whether it is denominated as a legal or factual claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638

4

(Tex. Crim. App. 2010). In conducting a sufficiency review, we defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The indictment charged Appellant with "intentionally and knowingly sexually [assaulting] PSEUMT, a disabled individual, by causing his male sexual organ to penetrate the anus of the said PSEUMT, without the said PSEUMT's consent, and the said [Appellant] compelled the said PSEUMT to submit and participate by the use of physical force and violence." *See* TEX. PENAL CODE ANN. § 22.021 (West Supp. 2013). As set out above, PSEUMT testified that Appellant engaged in the conduct alleged in the indictment. Appellant contends that PSEUMT's testimony "was simply not conclusive enough" to permit the jury to determine that Appellant engaged in the charged conduct. He further contends that PSEUMT's version of the encounter was undermined by his belated outcry of a few months, the fact that his mother did not initially believe his allegation, and the lack of corroborating evidence.

PSEUMT and Appellant offered contradictory versions of what transpired. As noted previously, we presume that the jury resolved any conflicts in the evidence in favor of the prosecution, and we defer to that determination in conducting our review of the evidence. The jury's determination to accept PSEUMT's version of the events was a decision based inherently on its evaluation

of the credibility of the witnesses, a decision that is within the jury's sole province to resolve.

PSEUMT's outcry a few months after the alleged assault satisfied the one-year statutory requirement for adult victims of sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West Supp. 2013) (A conviction for aggravated sexual assault "is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred."). The fact that PSEUMT's mother initially did not believe him is not surprising given the extreme nature of the conduct alleged and her close relationship to Appellant. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Appellant sexually assaulted PSEUMT as alleged in the indictment. Appellant's first issue is overruled.

*Extraneous Conduct Evidence*

Appellant asserts in his second issue that the trial court erred in permitting the State to offer testimony from PSEUMT during its rebuttal case that Appellant sexually assaulted him on at least four occasions when he was twelve or thirteen. Appellant asserts that this evidence was not admissible under TEX. R. EVID. 404(b).

The State attempted to offer evidence during its case-in-chief of instances where Appellant sexually assaulted PSEUMT when PSEUMT was twelve or thirteen. The State asserted that this evidence was being offered to show Appellant's state of mind at the time of the alleged assault, to show Appellant's opportunity because of PSEUMT's physical disability to commit an act that he previously attempted to commit, and to show absence of mistake or accident. The trial court denied the State's initial attempt to offer this evidence. The State sought to reoffer evidence of Appellant's prior acts during its rebuttal case on the basis

6

that the evidence rebutted Appellant's assertion that he had never had sexual contact with PSEUMT prior to the alleged assault. The trial court subsequently permitted the State to offer this evidence.

An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse-of-discretion standard of review. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The trial court's ruling will be upheld if it is found to be within the zone of reasonable disagreement. *Id.*; *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). A trial court's ruling on the admissibility of evidence will be upheld if the record reasonably supports the ruling and is correct under any theory of law applicable to the case. *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). A trial court's ruling on extraneous offense evidence is generally within the zone of reasonable disagreement if the evidence shows that an extraneous transaction is relevant to a material, non-propensity issue. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) (citing *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith under Rule 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive. *De La Paz*, 279 S.W.3d at 343. "Rule 404(b) is a rule of inclusion rather than exclusion." *Id.* "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)).

7

Rebuttal of a defensive theory is one of the permissible purposes for which extraneous offense evidence may be admitted. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Further, extraneous offenses are admissible to rebut theories raised by the testimony of a defense witness during direct examination or a State's witness during cross-examination. *See Daggett v. State*, 187 S.W.3d 444, 453–54 (Tex. Crim. App. 2005); *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1996).

As reflected in his testimony during the guilt/innocence phase of trial, Appellant asserted that PSEUMT consented to the alleged sexual encounter. "[W]hen the defensive theory of consent is raised in a prosecution for sexual assault, the defendant necessarily disputes his intent to engage in the alleged conduct without the complainant's consent and places his *intent* to commit sexual assault at issue." *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). Evidence of prior instances of sexual assault committed by Appellant on PSEUMT would tend to rebut Appellant's defensive theory of consent. Therefore, the trial court did not err in determining that the evidence was admissible under Rule 404(b). Appellant's second issue is overruled.

*Ineffective Assistance of Counsel*

Appellant asserts in his third issue that he was denied effective assistance of counsel because trial counsel failed to secure the attendance of a material witness. The standard of review for ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Bone v. State*, 77 S.W.3d 828 (Tex. Crim. App. 2002). To prevail, Appellant must first show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687; *Bone*, 77 S.W.3d at 833. "Specifically, [an] appellant must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms." *Bone*, 77 S.W.3d at 833. "Second, [an] appellant must show that this

8

deficient performance prejudiced his defense," meaning that Appellant "must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)). A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* "It is not sufficient for [an appellant] to show 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (quoting *Strickland*, 466 U.S. at 693). "Rather, [an appellant] must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland*, 466 U.S. at 695). Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). "Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). When determining the validity of an ineffective-assistance-of-counsel claim, judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).

Appellant presented his ineffectiveness allegation in a motion for new trial that the trial court denied after conducting a hearing. An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial court's ruling was clearly erroneous and arbitrary. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012).

Appellant alleged in the motion that Lupe Ramos would have testified at trial that the sexual intercourse between Appellant and PSEUMT was consensual. Appellant additionally alleged that Ramos would have testified that, "as far as [Ramos] knew, PSEUMT was not crippled or disabled." Appellant asserted that he informed trial counsel about Ramos and his testimony when trial counsel was initially appointed to represent him. Appellant supported these allegations with affidavits from Ramos and himself.

Both Appellant and Ramos testified at the hearing on the motion for new trial. Appellant testified that he told trial counsel about Ramos when trial counsel was initially appointed and that he provided trial counsel with Ramos's contact information. Appellant additionally testified that he spoke with Ramos on the day that the trial started. Appellant stated that he asked Ramos to call trial counsel but that Ramos told him he was busy and could not do so. Appellant testified that, when he relayed this information to trial counsel, trial counsel told him to call Ramos back and tell him to be at the courthouse the next morning.

On direct examination, Ramos testified that he observed Appellant and PSEUMT engaging in consensual sex. Ramos also testified that he observed PSEUMT walking and that he did not believe that PSEUMT was disabled. On cross-examination conducted by the prosecutor, Ramos testified that he had observed PSEUMT walking with the aid of only a small cane. Ramos additionally testified on cross-examination that he "didn't see much" in observing Appellant and PSEUMT from the hallway. Ramos further admitted that he did not know if

the conduct between Appellant and PSEUMT was consensual or forced. Under further questioning by the trial court and the attorneys, Ramos testified that he had only observed "touching" between the two while they were both standing. He concluded his testimony by denying that he saw Appellant and PSEUMT engaging in sexual intercourse despite what he stated in his affidavit.[3]

A claim of ineffective assistance based on trial counsel's failure to call a witness cannot succeed absent a showing that the witness was available to testify and that the witness's testimony would have benefited the defense. *See Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007). We direct our analysis on the issue of whether or not Ramos's testimony would have benefited Appellant. Ramos's testimony at the hearing on the motion for new trial was equivocal at best. He did not observe Appellant and PSEUMT engaging in sexual intercourse. Instead, he very briefly observed them engaging in conduct prior to intercourse. The observation was so brief that he was not able to determine whether it was consensual or forced. In light of Ramos's very brief observation of a prior interaction that he was unable to determine was forced or consensual, we conclude that the trial court did not abuse its discretion in reaching its implicit determination that Appellant would not have benefited from Ramos's testimony at trial.

Moreover, Appellant's trial counsel did not testify at the hearing on the motion for new trial. Prevailing on an ineffective assistance claim is very difficult without trial counsel explaining his strategy. *See Goodspeed*, 187 S.W.3d at 392. Trial counsel called Ramos as a witness at trial, but he was not present to testify. Even if trial counsel's only reason for failing to subpoena Ramos was his belief

---

[3]In his affidavit, Ramos stated in relevant part as follows:

I, LUPE RAMOS, Affiant, was present on or about December 30, 2005, at the time of the sexual conduct between [Appellant] and PSEUMT, and that such sexual conduct, in which [Appellant] penetrated the anus of PSEUMT with his male sexual organ, was completely consensual and did not involve any physical force and violence on the part of [Appellant] against PSEUMT.

that Ramos would appear, Appellant has not overcome the presumption that this fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687.

Appellant did not satisfy his burden to meet the first prong of *Strickland* to establish ineffective assistance of counsel. Accordingly, the trial court did not abuse its discretion in overruling his motion for new trial. Appellant's third issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE

February 27, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.