**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00074-CR
NO. 09-15-00075-CR

_____

**GILBERTO RANGEL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-12-13516 CR (Counts 1 and 2)**

**MEMORANDUM OPINION**

In seven issues, Gilberto Rangel appeals his convictions based on the jury's determination that he had sexually assaulted the same complaining witness twice on the same day. *See* Tex. Penal Code Ann. § 22.011(a)(1)(A), (B) (West 2011). Three of Rangel's issues—issues three, four, and six—assert claims of ineffective assistance of trial counsel. Two of the other issues—issues one and two—argue the trial court abused its discretion by failing to conduct a hearing on Rangel's motion

1

for new trial, and by denying his motion. Issue five asserts that Rangel is entitled to another trial based on a compliment the prosecutor gave the complaining witness about her testimony. In his last issue, issue seven, Rangel contends the evidence does not support the jury's determinations that on two occasions, he sexually assaulted the complaining witness.

We conclude that issues one through four, six, and seven are without merit, and that Rangel failed to preserve the complaints he makes in issue five for our review on appeal. We overrule Rangel's issues, and we affirm the trial court's judgments with respect to counts one and two in cause number 13-12-13516 CR.

Background

The testimony from Rangel's trial indicates that the complaining witness, "Olivia,"[1] is Rangel's sister-in-law. The evidence from Rangel's trial shows that for many years before the sexual encounters at issue, Rangel and Olivia engaged in infrequent but consensual sexual encounters. Additionally, for several years before the encounters at issue, Rangel, Olivia, and several other members of their respective families lived under the same roof. According to Olivia, in the months leading up to

---

[1] To protect the complaining witness's identity, we use the pseudonym "Olivia" instead of using the complaining witness's real name. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

the alleged sexual assaults, which occurred on January 30, 2013, she told Rangel that she wanted out of their relationship. Olivia explained that despite her request, Rangel continued to pursue her even though she told him that she no longer wanted to be with him.

The jury also heard testimony from Olivia that in the period she told Rangel that she no longer wanted him, she was dating "Seth,"[2] a man who lived in Dallas. Olivia testified that on January 30, 2013, she met Seth in Conroe. According to Olivia, Rangel saw her with Seth in Seth's truck while the truck was parked in a parking lot of a restaurant. When Rangel saw them together, Rangel approached the truck. As she opened the door, he pulled her out and slapped her. Next, Rangel and Olivia got into her truck, which she had parked in the same parking lot. Olivia explained that Rangel drove her truck from the restaurant, and while driving around, Rangel continued to hit her. Olivia indicated that at one point, she bit Rangel on the hand. After driving around, Rangel stopped and purchased beer. Olivia stated that she drank some of the beer because she was "very stressed[,]" and they ultimately pulled into the parking lot of a hotel where Rangel asked her to go inside. Olivia testified that she refused Rangel's request to go to a motel room; instead, she told

---

[2] To protect the identity of the man Olivia was dating when the sexual assaults allegedly occurred, we identify him by using the name "Seth" in the place of his real name.

3

Rangel again that she "did not want to be with him." They left the parking lot of the hotel, and Rangel ultimately parked Olivia's truck in a parking lot some distance from a large department store. Olivia testified that while in the department store's parking lot, Rangel hit her and then demanded sex. According to Olivia, she refused. Olivia then explained that at that point, Rangel forced her to engage in oral intercourse and to subsequently engage in vaginal intercourse.

Several witnesses provided evidence that tends to support Olivia's account about the events that occurred on January 30, 2013. Olivia's sister testified that within two days of the incident, Olivia informed her that Rangel had sexually assaulted her. Officer Thomas Taylor, a patrol officer employed by the City of Conroe Police Department, testified that he spoke to Olivia on February 5, 2013. Officer Taylor indicated that Olivia speaks Spanish, but that he communicated with her through an interpreter. Officer Taylor testified that Olivia told him that Rangel sexually assaulted her on January 30. Seth, the man that Rangel saw Olivia with on January 30, testified that he and Olivia were together when Rangel came to the parking lot of the restaurant and forcibly removed Olivia from his vehicle.

Rangel presented several witnesses in his defense during the guilt-innocence phase of his trial. Rangel also testified during the trial. Rangel's testimony indicates that Olivia invited the sexual encounters that occurred on January 30 and that she

participated in them willingly. Rangel testified that two weeks before January 30, he and Olivia engaged in a consensual sexual encounter. Rangel explained that on January 30, he saw Olivia leaving a restaurant with a man that he did not know. In his testimony, Rangel acknowledged that seeing Olivia with the man that evening upset him. Rangel also indicated that he saw Olivia kiss the man that evening in the restaurant's parking lot. According to Rangel, when Olivia saw him in the parking lot, she opened the truck's door, he grabbed her by the arm, and he told the man Olivia was with to leave. Rangel acknowledged that he argued with Olivia after they left together in her truck. Rangel indicated after leaving the parking lot, he drove around for a while, and then he stopped at a gas station where he bought a six-pack of beer. According to Rangel, Olivia consumed five of the six beers, and he ultimately drove Olivia's truck to a hotel where he knew that Olivia and the man he saw her with in the restaurant's parking lot had been together earlier that day. Rangel explained that he then left the hotel parking lot, drove to a gas station, filled the truck with gas, and then he took Olivia in the truck to the parking lot near a large department store. According to Rangel, while in the parking lot, Olivia told him that she loved him and that the man he had seen her with that day, Seth, was just her friend. Rangel testified that while they were together in the department store's parking lot, "[Olivia] unbuttoned my pants . . . and she began to give me oral sex."

5

After engaging in oral intercourse, Rangel explained that he took Olivia and parked her truck near the access road of the highway. Rangel explained that after he parked near the highway, Olivia jumped into the back seat of the truck and removed her pants and underwear. At that point, Rangel indicated that he engaged in sexual intercourse with Olivia, and his testimony indicates that both of the sexual encounters he had with Olivia on January 30 were consensual. Rangel also explained that on January 31, he moved to his son's house from the house where he had lived for years under the same roof with Olivia.

Olivia's sister and her brother-in-law testified during Rangel's trial. Both indicated that they were home on the night of January 30, they noticed Olivia had bruises indicating someone hit her, but both stated that Olivia did not tell them on the evening of January 30 that Rangel sexually assaulted her. Both Olivia's sister and brother-in-law also indicated that when Rangel came home later that night, Rangel initially denied hitting Olivia, but he later admitted doing so. According to Rangel's sister and brother-in-law, Rangel told them to ask Olivia why he hit her.

## Sufficiency of the Evidence

The argument Rangel presents in his seventh issue, were it to be successful, would require the court to render judgments of acquittal on his convictions for sexual assault. Therefore, we address issue seven first. In issue seven, Rangel suggests that

6

the inconsistencies in Olivia's testimony were so significant that "no rational jury could have found [Olivia's account regarding the two alleged sexual assaults] to be true beyond a reasonable doubt."

Rangel suggests that the evidence was insufficient to prove he sexually assaulted Olivia for several reasons, which include that (1) the evidence showed that Olivia had been involved with Rangel in a longstanding affair when the sexual assaults allegedly occurred; (2) discrepancies exist between Olivia's account that she did not willingly leave a restaurant parking lot with Rangel and the account of the individual who Rangel discovered Olivia with in the restaurant parking lot, whose testimony Rangel suggests shows she left the parking lot with him willingly; (3) Olivia's behavior after the sexual assaults allegedly occurred, indicating that Olivia willingly followed Rangel home instead of taking the opportunities she had to report any alleged sexual assaults, is behavior that Rangel contends is inconsistent with Olivia's claim that their sexual encounters were not consensual; (4) Olivia gave the police inconsistent accounts about the locations where the assaults were alleged to have occurred, inconsistencies that Rangel argues cast doubt on Olivia's version of the events that occurred on the night in question; (5) the account Olivia provided to police in an effort to explain why she failed to report the sexual assaults sooner is a circumstance that Rangel argues casts doubt on Olivia's version that her sexual

7

encounters with him were not consensual; and (6) Olivia's failure to immediately inform her relatives about the sexual assaults the night they occurred, according to Rangel, casts doubt on whether the sexual encounters were not consensual.

In reviewing whether sufficient evidence is in a record to support a defendant's conviction, we consider all of the evidence in the record, regardless of whether it was properly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In considering in an appeal what inferences a jury could reasonably make from the evidence, both direct and circumstantial evidence may be equally probative regarding whether a defendant is guilty of the crime for which he was tried. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). Under the law, the jury is allowed to decide both whether the witnesses who testified were credible and to decide what weight, if any, to attach to a witness's testimony. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As long as each of the inferences the jury makes from the evidence before them is supported by the evidence, a jury may draw multiple inferences from the facts presented during the trial. *Id*.; *see Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007) (stating that "courts of appeals should . . . determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict"). Nonetheless, a jury is not permitted to draw conclusions based on

8

speculation, since doing so would not result in a verdict that is based on a standard of beyond reasonable doubt. *Hooper*, 214 S.W.3d at 16. Ultimately, an appellate court must presume the jury resolved all conflicts in the evidence in favor of the verdict when the record is such that the jury could have either reasonably acquitted the defendant or found him guilty, and we are required on such a record to defer to the jury's determination. *Jackson*, 443 U.S. at 326.

Although Olivia's and Rangel's accounts about the events that occurred on January 30 were significantly different, we are required to defer to the jury's determination that the encounters were not consensual unless the jury must have had a reasonable doubt to the contrary. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). In this case, the evidence before the jury includes the complaining witness's testimony that she did not consent to Rangel's sexual advances on January 30, 2013, as well as circumstantial evidence showing that Rangel was jealous because he had seen Olivia with another man, that Rangel hit Olivia while arguing with her about whether she was having a relationship with Seth, and evidence showing that Olivia advised her sister and a police officer of the assaults a few days after January 30, the evening the State alleged the sexual assaults occurred. With respect to Rangel's complaints about the delays that occurred in Olivia's outcry regarding the assaults, the jury could have reasonably believed that any delay in

9

Olivia's reporting of the assaults was related to the time it took Olivia to decide whether she wanted to report a family member for committing sexual assaults against her under circumstances that would require her to reveal that she was involved both in a sexual relationship with her brother-in-law and a dating relationship with a man to whom she was not married.

Generally, the testimony of an adult victim who identifies the defendant as the person who committed a sexual assault is sufficient to support a jury's verdict convicting the defendant of the assault. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978). With respect to Olivia's allegedly delayed outcry regarding the sexual assaults, section 38.07 of the Code of Criminal Procedure provides that a conviction for sexual assault "is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred." *See* Tex. Code Crim. Proc. Ann. art. 38.07(a) (West Supp. 2016); *Hernandez v. State*, 426 S.W.3d 820, 824 (Tex. App.—Eastland 2014, pet. ref'd); *Benton v. State*, 237 S.W.3d 400, 404 (Tex. App.—Waco 2007, pet. ref'd). Olivia's reports of the alleged assaults to her sister and a police officer occurred within a week, a period well within the time period identified in the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a).

Considering the jury's right to judge the credibility and weight of the testimony that is admitted before it at trial, the inconsistencies Rangel points to in support of his argument complaining about the sufficiency of the evidence are not so significant that the jury could not have reasonably decided to believe Olivia's account that she did not consent to Rangel's sexual advances on the evening of January 30, 2013. We overrule Rangel's seventh issue.

Prosecutor's Comment on Witness's Testimony

In issue five, Rangel complains about a sidebar comment made by the prosecutor just after Olivia finished testifying, when he said: "No further questions. We're proud of her. She did [a] great job. Can she be excused?" In his appeal, Rangel complains that the prosecutor's comment interfered with his right to receive a fair trial.

The record does not show that Rangel's complaint about the prosecutor's statement was preserved for appeal. *See* Tex. R. App. P. 33.1 (preserving error for appellate review requires the complaining party to show that he presented his complaint to the trial court in a timely request, objection, or motion and that the trial court ruled on the request). Instead, the record shows that after the prosecutor made the comment, Rangel's attorney asked that Olivia stay at the courthouse in the event that she was needed to testify when Rangel presented his defense.

By failing to object to the prosecutor's comment when it occurred, the complaints Rangel makes about the prosecutor's comment were not preserved for appellate review. *See* Tex. R. App. P. 33.1(a); *Unkart v. State*, 400 S.W.3d 94, 98-99 (Tex. Crim. App. 2013); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Jasper v. State*, 61 S.W.3d 413, 420-21 (Tex. Crim. App. 2001); *see also Blue v. State*, 41 S.W.3d 129, 133 (Tex. Crim. App. 2000) (plurality op.). In his brief, Rangel does not argue that the error was fundamental; nevertheless, we note that fundamental errors involving statements by prosecutors occur only when their comments rise "to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Jasper*, 61 S.W.3d at 421; *see also Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004) (explaining absolute or systemic requirements from which errors concerning them can be raised on the appeal for the first time); *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002). The alleged error concerning the prosecutor's comment did not amount to fundamental error because it did not implicate any of the matters identified in *Jasper*. *See Jasper*, 61 S.W.3d at 421. Because Rangel failed to object to the comment, his complaints about the comment were not preserved for our review on appeal. *See* Tex. R. App. P. 33.1(a). We overrule Rangel's fifth issue.

Effective Assistance of Counsel

12

In issues three, four, and six, Rangel argues that he received ineffective assistance of counsel during the guilt-innocence phase of his trial. According to Rangel, the attorney who represented him in his trial was ineffective because he (1) failed to request a limiting instruction during trial and in the charge regarding evidence showing that in the months leading up to January 30, Rangel continued to call and follow Olivia to public places after she told him that she did not want to be with him; (2) elicited testimony from Olivia during the trial indicating that in the last several sexual encounters she had with Rangel before January 30, Rangel forced her to have sex and hit her; and (3) failed to object to the prosecutor's comment thanking Olivia for her testimony, which we discussed in issue five.

To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance fell below an objective standard of reasonableness, and that a reasonable probability exists to show that, but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The defendant making an ineffective assistance of counsel claim bears the burden of developing the facts required to show that the attorney who represented the defendant rendered ineffective assistance based on the standards identified in *Strickland*. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (citing *Strickland*, 466 U.S. at 689). Additionally, the defendant must

overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 690). Ordinarily, on direct appeal, the record will not have been sufficiently developed during the trial regarding trial counsel's alleged errors to demonstrate in the appeal that trial counsel provided ineffective assistance under the *Strickland* standards. *Menefield v. State,* 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012). Moreover, the difficulty in showing that trial counsel was ineffective is particularly difficult when the record that is created in a defendant's trial fails to show why trial counsel chose to do something or failed to do something that is the subject of the complaints the defendant raises in his appeal.

In this case, although Rangel filed a motion for new trial, the motion that he filed did not level the same complaints about counsel that Rangel argues in issues three, four, and six. As a result, the record fails to contain explanations by Rangel's trial counsel regarding why he handled the matters that are the subject of Rangel's appellate issues in the manner they were handled. Given a record that does not contain trial counsel's explanation regarding the matters made the subject of the complaints in the appeal, Rangel has failed to affirmatively demonstrate based on the record before us that his complaints about trial counsel have any merit.

14

Moreover, we must presume that the decisions Rangel's trial attorney made in presenting his case to the jury were appropriate. *See Scheanette v. State*, 144 S.W.3d 503, 509-10 (Tex. Crim. App. 2004). We hold that Rangel has failed to demonstrate that he received ineffective assistance of trial counsel based on the record that is currently before us. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). We overrule Rangel's third, fourth, and sixth issues.

Motion for New Trial

In issues one and two, Rangel argues that the trial court abused its discretion by denying his request for a hearing on his motion for new trial on punishment and by denying that motion. On appeal, Rangel asserts that his attorney was ineffective because he failed to talk to and present two witnesses, Olivia's daughters,[3] who he claims would have provided evidence that would have been favorable to his defense. According to Rangel, the testimony of Olivia's daughters "would have made a difference in the punishment verdict."

Rangel relies on two of the affidavits that he attached to his motion for new trial to support his argument that Olivia's daughters should have been called during

---

[3] Olivia's daughters are also his nieces, who had lived in the same house with Rangel and Olivia.

the punishment phase of his trial.[4] One of the affidavits Rangel relies on is the affidavit of a private investigator, who spoke with Olivia's two daughters after the trial.[5] The other affidavit Rangel relies on in his appeal was signed by one of the attorneys who represented him during his trial. The attorney's affidavit reflects that he would have called Olivia's daughters during the punishment phase of the case based on his understanding that they would have testified in Rangel's favor regarding the fact that Olivia bruises easily, that her bruises appear worse than they are, that they grew up in a home where Rangel was present and he was like a second dad to them, that they think Rangel's sentence is too harsh, that they were led to

---

[4] Although Rangel's motion for new trial is supported by additional affidavits, the other affidavits concern issues that Rangel has not argued on appeal.

[5] The affidavit of the private investigator reflects that he spoke with Olivia's two daughters. The investigator's affidavit indicates that both of Olivia's daughters desired to help Rangel in any way possible. It further reflects that one of Olivia's daughters told the investigator that she was not aware that Olivia had claimed that Rangel sexually assaulted her, although she indicated that Olivia did tell her about a physical assault without providing her any further details. The affidavit reflects that Olivia's other daughter told the investigator that Olivia never told her about the assaults, although her aunt told her that Rangel had hit her mother the day after the incident occurred. The investigator's affidavit indicates that both of Olivia's daughters told the investigator that Olivia bruises easily, and because of her complexion, bruises to her face appear worse than they really are. One of Olivia's daughters told the investigator that she had lived with Rangel her entire life, and she felt that Rangel was a second dad who had always been there for her. The investigator's affidavit suggests that both of Olivia's daughters told him that when they asked Olivia about why Rangel assaulted her, Olivia said "she did not know."

believe by Olivia that Rangel had only assaulted her, and that one of Olivia's daughters indicated that Olivia was trying to make herself look like a victim to hide her affair with Rangel, an affair that she had always concealed.[6]

Appellate courts review a trial court's denial of a defendant's request for a hearing on a motion for new trial using an abuse-of-discretion standard. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). A trial court abuses its discretion in failing to hold a hearing on a motion for new trial if the motion raises matters that are not determinable from the record and establishes reasonable grounds indicating that the defendant could be entitled to relief. *Id.* at 338-39. Because a trial court exercises discretion in deciding whether a hearing is necessary on the matters a defendant raises in his motion seeking a new trial, "we reverse 'only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.'" *Id.* at 339 (quoting *State v. Gonzalez*, 855 S.W.2d 692, 695 n.4, 696 (Tex. Crim. App. 1993)). When a motion for new trial relies on a claim of ineffective assistance of counsel, as does Rangel's, the defendant's motion "must allege sufficient facts from which a trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent

_____

[6] We reiterate that the affidavit of Rangel's attorney does not include any facts related to the matters Rangel complains about in issues three, four, and six of his appeal.

17

attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Id.* at 341; *see also Strickland v. Washington*, 466 U.S. 668.

In his appeal, Rangel complains that he "filed a motion for new trial requesting a hearing on whether or not he received ineffective assistance of counsel during the punishment stage of trial for [trial counsel's] failure to investigate and call [Olivia's daughters] as witnesses[.]" Issues one and two do not claim that Rangel is entitled to another trial to resolve whether he was guilty based on the testimony of Olivia's daughters. However, the majority of the matters in the affidavits of Rangel's private investigator and his attorney discussing what Olivia's daughters knew concern matters that the trial court could have reasonably viewed as irrelevant to the punishment phase of Rangel's trial. The matters the affidavits identify that might have been relevant to punishment—that Rangel had been a father-figure to Olivia's daughters when they grew up, that Rangel was a person of good character, and that Olivia was not a reliable witness—would have been testimony that was cumulative of similar testimony the jury heard during the punishment hearing regarding Rangel's character, matters already before the jury based on the testimony admitted during the punishment hearing from Rangel's ex-wife, his former brother-in-law, and his son.

18

The witnesses during Rangel's punishment hearing testified that Rangel was a family man loved by his family; a hard worker; and a law-abiding person who, should he receive probation, would have their help in completing it. The jury was also presented with the testimony of Rangel's ex-wife during the trial that Olivia had a bad reputation for truthfulness. Rangel's son and former brother-in-law, two of the individuals who testified in Rangel's defense and who addressed his good character, are law enforcement officers. Thus, while the affidavit of Rangel's trial attorney stated that he thought there was a reasonable probability "that the outcome of the punishment phase of trial would have been different," his bare conclusion fails to demonstrate why the proposed testimony from Olivia's daughters would have provided the jury with evidence that was not cumulative of similar testimony that was before them from other witnesses and how the testimony of Olivia's daughters, given that it would have been cumulative, would have caused the jury to return with a reduced sentence.

We conclude that the trial court could reasonably view the matters discussed in the affidavits of Rangel's investigator and his attorney as testimony that would have been cumulative of similar evidence that was already before the jury. "Evidence which is merely *cumulative* will rarely be judged by trial or appellate courts to be of such weight as likely to bring about a different result." *Kennerson v.*

*State*, 984 S.W.2d 705, 708 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd); *see also Ruiz v. State*, No. 14-15-00285-CR, 2016 Tex. App. LEXIS 8732, at \*17 (Tex. App.—Houston [14th Dist.] Aug. 11, 2016, no pet.) (mem. op., not designated for publication).

We hold the trial court did not abuse its discretion by denying Rangel's request for a hearing on his motion because the motion reflects the testimony of the witnesses that Rangel desired to call in another punishment hearing would be cumulative of testimony that the jury had already considered. *See Tutt v. State*, 940 S.W.2d 114, 121 (Tex. App.—Tyler 1996, pet. ref'd). For the same reason, we further conclude the trial court did not abuse its discretion by denying Rangel's motion for new trial. *Id*. We overrule issues one and two.

Having overruled all of Rangel's issues, we affirm the judgments the trial court rendered on Counts 1 and 2 in cause number 13-12-13516 CR.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 25, 2016
Opinion Delivered January 18, 2017
Do Not Publish
Before Kreger, Horton, and Johnson, JJ.