**Opinion filed October 30, 2020**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-18-00286-CR & 11-18-00317-CR

_____

### JESSE FLORES LARA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 50th District Court**
**Baylor County, Texas**
**Trial Court Cause Nos. 5662 & 5656**

### M E M O R A N D U M   O P I N I O N

In Cause No. 11-18-00286-CR, the jury convicted Appellant, Jesse Flores Lara, of aggravated assault. In Cause No. 11-18-00317-CR, the same jury convicted Appellant of unlawful restraint. In this regard, the trial court consolidated the two cases for trial. For the aggravated assault conviction, the jury assessed Appellant's punishment at confinement for a term of fifteen years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $5,000. For the unlawful restraint conviction, the jury assessed Appellant's punishment at confinement for a

term of five years and a fine of $3,000. The trial court ordered that both sentences of confinement were to be served concurrently. Appellant brings four issues challenging his convictions. We affirm.

*Background Facts*

The events giving rise to the two criminal convictions occurred on May 15, 2017, in the home that the victim, Kimberly Ann Hale, shared with Appellant. After taking Appellant's daughter to school that morning, Hale returned to Appellant's home to find him pacing the floor. Appellant accused Hale of sleeping with another man and taking too long that morning to take his daughter to school. Hale testified that Appellant slapped her and pulled her around by her hair. He then called the wife of the man that he accused Hale of sleeping with to come "beat [Hale's] ass." Teri Gurau then came to Appellant's house, at which point she and Appellant assaulted Hale over the course of several hours.

Hale testified that Gurau and Appellant initially spoke in another room after Gurau arrived. Appellant then told Hale to get up and fight Gurau, but Hale refused. Gurau then stood over Hale, who was seated on a couch, and started punching Hale. Afterwards, Appellant grabbed Hale by her hair and threw her down on the floor, whereupon he started kicking her and slapping her. Gurau also kicked Hale a couple of times when Hale was on the floor.

Hale attempted to escape through an exterior door in a bedroom. However, Appellant grabbed her and slammed her face first into the floor. He then dragged her back to the living room and continued to assault her while accusing her of sleeping with Gurau's husband. Hale testified that, at one point, Appellant punched her between her left eye and her nose with a closed fist. As a result, blood began pouring out of Hale's nose. When Hale told Appellant that she was "hurt" and that something was wrong, Appellant began laughing. Appellant and Gurau later made Hale get a mop and clean up the blood from her injury. During the course of the

2

assault, Appellant broke Hale's glasses and cell phone, and he flushed her high school class ring down the toilet. Appellant also made Hale cut off a portion of her own hair.

Gurau pleaded guilty to the aggravated assault of Hale. Gurau testified that she arrived at Appellant's house at 10:30 a.m. after Appellant called her to report his belief that Hale was sleeping with Gurau's husband. Gurau testified that Appellant said, "You can come over and kick [Hale's] ass if you want to." Gurau's description of the assault largely tracked Hale's account, including the details of Appellant making Hale cut her own hair off and clean up her own blood.

Hale was eventually able to escape when Appellant's daughter returned home from school that afternoon. Appellant told Hale to go to a bedroom so that his daughter would not see her. This was the same bedroom with an exterior door that Hale had attempted to escape from earlier. Hale was able to escape from the house this time through the exterior door. She ran to the Subway next door and borrowed the phone to call her friend, Kimberly Stevenson, to come pick her up. The friend's husband picked up Hale a few minutes later.

Stevenson testified that Hale needed medical attention. Stevenson and her husband transported Hale to the emergency room of Seymour Hospital. The medical records from Seymour Hospital noted that Hale suffered a "blowout" fracture of the left orbital bone below her eye, soft tissue injuries and multiple contusions to her face and skull, and multiple bruises to her lower extremities. The physician's assistant that examined Hale at the Seymour Hospital transferred her by ambulance to United Regional Health Care System in Wichita Falls because of his concern about her vision and the head injuries that she had suffered.

The medical records from United Regional noted that "there is significant contusions and hematomas of the forehead, the left and right upper and lower eyelids as well as the midface. As well as contusions to the neck." The records further

noted that Hale suffered a "medial deviation" of the left eye that prevented the eye from tracking normally. The treating physician at United Regional testified that Hale suffered from a gaze deficit of her eye because of the orbital fracture as well as extensive injuries to her face. He transferred Hale to John Peter Smith Hospital in Fort Worth so that her orbital fracture and ophthalmological issue could be further evaluated and treated.

*Analysis*

In his first issue, Appellant asserts that the trial court violated the requirements of *Faretta* by not properly admonishing him when he expressed displeasure with appointed counsel. *See Faretta v. California*, 422 U.S. 806 (1975). Under *Faretta*, if a defendant asserts his rights to self-representation, the court must admonish the defendant as to the "dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) (quoting *Faretta*, 422 U.S. at 835). However, Appellant never expressed an interest in representing himself at trial. Instead, Appellant informed the trial court that he was displeased with appointed counsel and that he wanted to "discharge him or fire him."[1] The *Faretta* admonishments are only required when a defendant represents himself without the assistance of counsel. *See Dolph v. State*, 440 S.W.3d 898, 907–

---

[1]Appellant does not challenge the trial court's ruling on his motion to discharge counsel. Had he done so, we would review the trial court's ruling whether to grant a motion to dismiss appointed counsel for an abuse of discretion. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). "[A]n indigent defendant has no right under the Federal or State Constitutions to have counsel of his choosing." *Stearnes v. Clinton*, 780 S.W.2d 216, 225 (Tex. Crim. App. 1989). A defendant bears the burden of making the trial court aware of his dissatisfaction with counsel, stating his grounds for his dissatisfaction, and offering evidence in support of his complaint. *Hill v. State*, 686 S.W.2d 184, 187 (Tex. Crim. App. 1985). Generally, personality conflicts and disagreements concerning trial strategy are typically not valid grounds to remove appointed counsel. *King*, 29 S.W.3d at 566. The trial court is permitted to consider the impact that a removal of counsel would have on the orderly administration of the judicial process. *Id.* In this regard, Appellant presented his request to discharge appointed counsel approximately five weeks before trial, almost ten months after appointed counsel began representing Appellant.

4

08 (Tex. App.—Texarkana 2013, pet. ref'd) (citing *Maddox v. State*, 613 S.W.2d 275, 286 (Tex. Crim. App. 1980) (op. on reh'g)). Moreover, "representation by counsel . . . is the standard, not the exception." *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 161 (2000). "[A] defendant's right to self-representation is not triggered until it is asserted." *Lathem v. State*, 514 S.W.3d 796, 802 (Tex. App.—Fort Worth 2017, no pet.). Accordingly, we overrule Appellant's first issue.

Appellant's second issue addresses a matter that came about as a result of Appellant's failure to appear for trial. The prosecutor requested that the trial court have a deputy call Appellant's name "three times in the hall" to determine if he was present in the courthouse and asked that, if he was not present, the trial court revoke his bond and issue a capias. The trial court granted the prosecutor's request by asking the county sheriff to call Appellant's name in the hallway outside the courtroom. After doing so, the sheriff reported that Appellant did not appear. Appellant's trial counsel then requested a continuance until Appellant could be found. The trial court denied the motion for continuance, declared Appellant's bond to be insufficient, and issued a judgment nisi to secure Appellant's attendance at trial.[2] Appellant's trial counsel then moved to discharge the jury panel on the basis that it was tainted with the knowledge that Appellant had failed to appear based in part on the sheriff calling Appellant's name in the presence of the jury panel. The trial court overruled trial counsel's request.

Appellant asserts on appeal that the trial court's act of directing the sheriff to call Appellant's name in the hallway destroyed the presumption of innocence. *See* TEX. PENAL CODE ANN. § 2.01 (West 2011) ("All persons are presumed to be innocent" and "[t]he fact that [a person] has been arrested, confined, or indicted for,

---

[2]Appellant subsequently appeared for trial after voir dire ended. He advised the trial court that he had overslept.

or otherwise charged with, the offense gives rise to no inference of guilt at his trial."); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.03 (West Supp. 2020); *Martin v. State*, 570 S.W.3d 426, 437 (Tex. App.—Eastland, pet. ref'd), *cert. denied*, 140 S.Ct. 485 (2019). We disagree. We first note that the trial court's instruction to the sheriff to call Appellant's name in the hallway complied with the requirements of the Code of Criminal Procedure for forfeiting a defendant's bond. *See* CRIM. PROC. arts. 22.01, 22.02 (West 2009); *Aspilla v. State*, 952 S.W.2d 610, 613 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (calling the defendant's name in the hallway outside the courtroom door satisfies the requirements of Article 22.02).

Furthermore, a comment made in the presence of the panel that the defendant is not present is not impermissible if it does not convey the trial court's opinion or impression of the case. *See Hurd v. State*, No. 07-07-0262-CR, 2008 WL 4508769, at *2 (Tex. App.—Amarillo Oct. 8, 2008, no pet.). As was the case in *Hurd*, the trial court here did not impart to the jury any information intended to taint the presumption of innocence or vitiate the impartiality of the jury. *See id.* Accordingly, we overrule Appellant's second issue.

Appellant's third issue is directed to a comment made by the prosecutor immediately prior to the presentation of evidence. After Appellant's trial counsel invoked "the witness rule," the prosecutor stated as follows: "Your Honor, by agreement, the defendant has agreed that my investigator who may, if we have a punishment phase, testify about fingerprints on former judgments, that he may be an exception to the rule and be allowed to stay in."[3] *See* TEX. R. EVID. 614. Appellant's trial counsel then asked to approach the bench, at which time he stated that the prosecutor's statement "might be prejudicial" by its reference to potential

---

[3]By making the comment, it appears that the prosecutor was explaining to the visiting judge who was trying the case why the State's investigator was going to remain present for trial even though the rule had been invoked.

punishment exhibits. The trial court then overruled trial counsel's request for a mistrial.

On appeal, Appellant does not specifically challenge the trial court's ruling on the motion for mistrial. Instead, he attacks the comment made by the prosecutor on the basis that it violated Rule 404(b) and Rule 403. *See* TEX. R. EVID. 403, 404(b). "Ordinarily, a conviction is not overturned unless the trial court makes a mistake." *Johnson v. State*, 169 S.W.3d 223, 228–29 (Tex. Crim. App. 2005). Thus, most appellate issues are directed at the conduct of the trial court rather than opposing counsel. In some limited situations, misconduct by the prosecutor can be grounds for overturning a conviction even though the trial court has done nothing wrong. *Id.* at 229 (listing the following examples: if perjured testimony is knowingly used, exculpatory evidence is suppressed, or the prosecutor has a conflict of interest requiring recusal). Because the comment by the prosecutor does not fall into one of these limited circumstances, we will construe Appellant's issue as a challenge to the trial court's ruling on the motion for mistrial.

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A mistrial is an extreme remedy for a narrow class of highly prejudicial and incurable errors during the trial process. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We review the denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A trial court does not abuse its discretion unless its decision falls outside the zone of reasonable disagreement. *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). The determination of whether an error necessitates a mistrial must be made by examining the facts of each case. *Ladd*, 3 S.W.3d at 567.

We conclude that the prosecutor's comment was not so extreme that it was either incurable or made future proceedings futile. The possibility that the jury would have discerned from the comment that Appellant had a prior criminal record is not entirely clear, as evidenced by trial counsel's statement that it "might be prejudicial." Furthermore, an instruction to disregard the comment likely would have cured any adverse effect that it caused. We conclude that the trial court did not abuse its discretion by overruling the relief requested by Appellant in response to the prosecutor's comment. We overrule Appellant's third issue.

In his fourth issue, Appellant challenges the trial court's ruling that permitted Hale to testify that Appellant was a drug dealer. The testimony occurred during the redirect examination of Hale when the prosecutor asked her, "What was your source of income?" Outside of the presence of the jury, Appellant's trial counsel objected to the question on the basis that it would inquire into "uncharged bad acts." Appellant objected that Hale's answer that her source of income was Appellant "dealing drugs" should be excluded under Rule 404(b) and Rule 403.

In response, the prosecutor argued that Appellant had opened the door to this inquiry by having Hale admit on cross-examination that she did not have "any legal source of income" while living with Appellant. The trial court agreed with the prosecutor's argument that this line of questioning of Hale created the false impression that Hale was a drug dealer and that the State should be permitted to offer evidence that Appellant was supporting the couple by his drug dealing activities.

We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). This standard of review applies to a trial court's decision to admit or exclude extraneous offense evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001).

8

We will uphold a trial court's evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity with that conduct. TEX. R. EVID. 404(b)(1). This rule excludes evidence offered to prove bad character and conduct in conformity with that bad character. *De La Paz*, 279 S.W.3d at 343. Evidence of other crimes, wrongs, or acts may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or rebuttal of a defensive theory. TEX. R. EVID. 404(b)(2); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *Hernandez v. State*, 426 S.W.3d 820, 825 (Tex. App.—Eastland 2014, pet. ref'd) (mem. op.). The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive. *De La Paz*, 279 S.W.3d at 343.

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). "Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347 S.W.3d at 921.

In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991)). An analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined that the evidence was admissible. *Id.*

We note at the outset that the jury had already been presented with evidence that Appellant and Gurau smoked methamphetamine during the assault. Accordingly, this is not a situation where Hale's answer caused drugs to be mentioned for the first time at trial. Instead, Appellant directs his challenge at the evidence that Appellant was a drug dealer.

Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). Evidence that would be impermissible character conformity evidence can become admissible if the defendant opens the door to that evidence. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). The trial court concluded that Appellant opened the door to his status as a drug dealer by his questioning of Hale. In addition to questioning Hale about her lack of a legal source of income, Appellant's trial counsel questioned Hale about Appellant's work. Specifically, trial counsel asked Hale: "[Appellant] was paying for your food and utilities and housing,

so he was working?" A party opens the door by leaving a false impression with the jury that invites the other side to expose, correct, or rebut the false impression. *Hayden*, 296 S.W.3d at 554. Accordingly, the trial court did not abuse its discretion by determining that Appellant opened the door to make his source of income admissible.

Moreover, the evidence that Appellant was a drug dealer had additional relevancy other than just being character conformity evidence. Appellant's status as a drug dealer was relevant to the nature of the relationship between Appellant, Hale, Gurau, and Gurau's husband. Hale testified that Appellant provided methamphetamine to Gurau and Gurau's husband and that Hale and Appellant would visit Gurau's and her husband's home to do drugs provided by Appellant. Hale also testified that Gurau and Appellant smoked methamphetamine during the assault and that Appellant provided the methamphetamine that they consumed. Furthermore, Gurau initially claimed that she was the only person that assaulted Hale. She did so after talking to Appellant. Appellant's status as Gurau's drug dealer was relevant to the relationship between the two and why Gurau would participate in Appellant's assault of Hale, as well as why Gurau might have initially claimed that Appellant had no role in the assault. Accordingly, the trial court did not abuse its discretion by overruling Appellant's Rule 404(b) objection.

With respect to the trial court's ruling on the Rule 403 objection, we have previously noted that Appellant's use of drugs with Gurau during the assault was already before the jury prior to the admission of testimony that Appellant was a drug dealer. Thus, while the evidence that Appellant was a drug dealer may have been prejudicial, its prejudicial effect was tempered by the prior evidence of the use of drugs. Furthermore, we have noted that Appellant opened the door to his status as a drug dealer by his attempt to cast Hale in a negative light as a drug user with no legal source of income. Accordingly, the prejudice that Appellant may have suffered from

11

the evidence that he was a drug dealer was prejudice that he brought upon himself by his questioning of Hale. The evidence was probative of the relationship between Appellant and Gurau, and it served to explain the actions taken by Gurau. Finally, the presentation of the challenged evidence did not take an inordinate amount of time. We conclude that the trial court did not abuse its discretion by overruling Appellant's Rule 403 objection. We overrule Appellant's fourth issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY<br>CHIEF JUSTICE


October 30, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[4]

Willson, J., not participating.

---

[4]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.